UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-cv-00593-RJC-DCK

| | |
|---|---|
| DORIEN ANDREWS II AND CONNER CRISCO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BOJANGLES OPCO, LLC AND BOJANGLES RESTAURANTS INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  **ORDER**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** comes before the Court on Plaintiffs' Motion for Conditional Certification of a Collective Action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). (Doc. No. 11). For the reasons set forth below, Plaintiffs' Motion is **GRANTED in part and DENIED in part**, as explained herein.

I. BACKGROUND

Defendant Bojangles Restaurants, Inc. owns and operates chicken and biscuits restaurants throughout parts of the United States, primarily in the southeastern United States. (Doc. No. 10 at 3). Plaintiffs were employed by Defendants as Assistant General Managers ("AGM") at Defendants' restaurants in various locations in North Carolina. (Doc. No. 1 at ¶¶ 3, 7–8; Doc. No. 10 ¶¶ 3, 7–8).

Plaintiffs filed a Complaint in this Court on September 19, 2023. (Doc. No. 1). In their Complaint, Plaintiffs allege that Defendants willfully violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201. Specifically, Plaintiffs allege that

1

throughout the relevant period, it was Defendants' policy, pattern, or practice to require, suffer, or permit Plaintiffs and the putative collective members to work in excess of 40 hours per workweek without paying them overtime wages for all overtime hours worked. (Doc. No. 1 at ¶ 42). Further, Plaintiffs and the putative collective members contend that they performed the same or substantially similar primary job duties, including the non-exempt tasks of cashiering, cooking, cleaning, and restocking products. (Id. at ¶ 27).

After Plaintiffs filed this Complaint, two additional AGMs filed consents to join this lawsuit. (Doc. No. 6). Defendants have filed their Answer. (Doc. No. 10). Plaintiffs, through this Motion, seek conditional certification before beginning discovery. (Doc. No. 12 at 3). The Motion for Conditional Certification is fully briefed and ripe for adjudication.

## II. FLSA CONDITIONAL CERTIFICATION STANDARD

### A. Two-Stage FLSA Certification Process

The Fair Labor Standards Act (FLSA) allows a plaintiff alleging a violation of the statute to bring suit on his own behalf or on behalf of other employees who are similarly situated. *See* 29 U.S.C. § 216(b). Section 216(b) of the FLSA expressly provides for the procedure for collective actions as follows:

> An action to recover the liability prescribed [under the FLSA] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

2

*Id.* Thus, there are two requirements for the certification of a FLSA collective action: (1) the members of the proposed class must be "similarly situated," and (2) the class members must "opt-in" by filing their consent to suit. *Id.*; *see also Mode v. S-L Distribution Co., LLC*, No. 3:18-CV-00150-RJC-DSC, 2019 WL 1232855, at *2 (W.D.N.C. Mar. 15, 2019).

The term "similarly situated" is not defined in the FLSA and the Fourth Circuit has not provided guidance on how the "similarly situated" requirement of § 216(b) should be applied. *Dearman v. Collegiate Hous. Servs., Inc.*, No. 5:17-CV-00057-RJC-DCK, 2018 WL 1566333, at *2 (W.D.N.C. Mar. 30, 2018) (citing *Holland v. Fulenwider Enterprises*, Inc., No. 1:17-CV-48, 2018 WL 700801, at *2 (W.D.N.C. Feb. 2, 2018)). However, federal district courts in the Fourth Circuit typically follow a two-step approach when deciding whether the named plaintiffs are similarly situated to potential plaintiffs for the purposes of certifying the collective action. *Id.*; *see, e.g., Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012); *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011); *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562–63 (E.D. Va. 2006).

At the first stage, the "notice stage," the court makes a preliminary determination whether to conditionally certify the class based upon the limited record before the court. *Long v. CPI Sec. Sys., Inc.*, 292 F.R.D. 296, 298 (W.D.N.C. 2013); *Romero*, 796 F. Supp. 2d at 705. "Consistent with the underlying purpose of the FLSA's collective action procedure, this initial inquiry proceeds under a 'fairly lenient standard' and requires only 'minimal evidence.'" *Mode*, 2019 WL 1232855, at *2.

3

(quoting *Choimbol*, 475 F. Supp. 2d at 562); *see also Romero*, 796 F. Supp. 2d at 705 ("The standard for conditional certification is fairly lenient and requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.") (quotation omitted). Plaintiffs need only provide "substantial allegations" to meet their burden. *Holland v. Fulenwider Enterprises, Inc.*, No. 1:17-CV-48, 2018 WL 700801, at *2 (W.D.N.C. Feb. 2, 2018).

The primary focus in this inquiry is whether the potential plaintiffs are "similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined." *De Luna-Guerrero v. The North Carolina Grower's Assoc.*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004) (quoting Ellen C. Kearns, The Fair Labor Standards Act, § 18.IV.D.3, at 1167 (1999)). "If the class is conditionally certified, the court typically authorizes plaintiffs' counsel to provide the putative class members with notice of the lawsuit and their right to opt-in." *Romero*, 796 F. Supp. 2d at 705 (citation omitted).

"The court proceeds to stage two if the defendant files a motion for decertification, usually after discovery is virtually complete." *Choimbol*, 475 F. Supp. 2d at 563 (citation omitted). Thus, "throughout the second stage, courts apply a heightened fact specific standard to the 'similarly situated' analysis." *Id.* If the Court concludes that Plaintiffs have met their burden of proving they are "similarly situated," the collective action proceeds to trial. *Id.* However, if the court determines that Plaintiffs are not "similarly situated," the class will be decertified and the original Plaintiffs may proceed on their individual claims. *Id.*

Defendants urge the Court to reject the two-step analysis's "lenient" standard and require Plaintiffs to meet a stricter standard to show that the potential collective members are similarly situated because, Defendants contend, the lenient standard has "fallen out of favor in the courts of appeals." (Doc. No. 17 at 5).

Defendants cite to cases in the Fifth and Sixth Circuits to bolster their view that Plaintiffs ought to meet a stricter standard for conditional collective action certification. *See Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021); *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023). Because federal district courts in the Fourth Circuit, including this Court, have consistently followed the two-step approach, the Court declines to follow these other circuit courts, and some district courts, in enacting a more rigorous approach to conditional collective action certification. *See, e.g.*, *Hernandez v. KBR Servs., LLC*, No. 3:22-CV-530-HEH, 2023 WL 5181595, at *6 (E.D. Va. Aug. 11, 2023) ("[T]his Court sees no compelling reason to deviate from twenty years of established precedent. . . . In light of the refusal of multiple district courts within the Fourth Circuit to apply *Swales*, and in the absence of guidance from the Supreme Court or the Fourth Circuit on the issue, the Court will continue to apply the two-stage collective certification process."). Therefore, the Court will proceed under the two-step analysis.

### III. DISCUSSION

**A. Similarly Situated**

Plaintiffs move the Court to conditionally certify this action and permit

5

Case 3:23-cv-00593-RJC-DCK    Document 24    Filed 09/11/24    Page 5 of 16

Plaintiffs to send court-authorized notice to the following proposed collective:

> All Assistant General managers, Assistant Managers, Assistant Unit Managers, and employees in similar positions but different job titles (collectively "AGMs") who worked for Defendants at any of its restaurant locations nationwide from September 19, 2020, to the present.

(Doc. No. 12 at 1). Plaintiffs contend that members of the proposed collective have been misclassed as exempt employees and therefore wrongfully denied overtime pay for the significant overtime hours that they worked as AGMs. (*Id.*).

"Plaintiffs are similarly situated to a class when they raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 833–34 (E.D. Va. 2008) (cleaned up). The mere classification of a group of employees as exempt under the FLSA, without more, is insufficient to show a common policy, plan, or practice for the purposes of section 216(b). *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 927 (D. Ariz. 2010); *see also In re Family Dollar FLSA Litig.*, No. 3:08-MD-1932-GCM, 2014 WL 1091356, at *2 (W.D.N.C. Mar. 18, 2014) ("Reliance on a common job description and a uniform classification of Store Managers as exempt is insufficient for conditional certification." (citing *Myers v. Hertz Corp.,* 624 F.3d 537, 549 (2d Cir. 2010))). "Simply put, the common factual nexus must be more substantial than allegations that plaintiff and opt-in plaintiffs share a job description and job title." *Holland v. Fulenwider Enterprises, Inc.*, No. 1:17-CV-48, 2018 WL 700801, at *3 (W.D.N.C. Feb. 2, 2018) (citations omitted).

However, as noted above, "the standard for conditional certification is fairly lenient and requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Romero*, 796 F. Supp. at 705 (cleaned up). "The relevant issue here is not whether Plaintiffs and potential opt-in plaintiffs were identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week." *Long*, 292 F.R.D. at 304 (cleaned up).

Further, at his stage, a court does not determine that those notified of the action are, in fact, similarly situated to the plaintiff; instead, a court only authorizes notice to be sent to those who might be potential plaintiffs. *McNeil v. Faneuil, Inc.*, No. 4:15CV81, 2016 WL 11673838, at *3 (E.D. Va. Aug. 3, 2016). A fact-intensive inquiry is inappropriate at the notice stage, as plaintiffs are seeking only conditional certification. *Long*, 292 F.R.D. at 303.

Plaintiffs argue that the realistic expectation of the AGM job is to perform primarily non-exempt manual work and customer service job duties such as cooking, cleaning, cashiering, working the drive-thru, and loading and unloading trucks; thus, AGMs spend a vast majority of their day performing non-exempt duties. (*Id.* at 1–2). Plaintiffs provide affidavits explaining their experiences as AGMs. The individuals have worked at Bojangles locations in Charlotte, Matthews, Gastonia, Locust, Mint Hill, Dobson, King, Mount Airy, and Wilmington—all in North Carolina. Plaintiffs identify AGMs other than themselves who they believe are similarly situated—all within North Carolina as well.

7

The AGMs describe that they were classified as salaried employees and did not receive overtime compensation for any hours worked over 40 hours per week but were scheduled to work a 50-hour workweek, and "due to the demands of the job," ended up working more than 50 hours per workweek. (Doc. Nos. 12-1, 12-2, 12-3, 12-4). Technology utilized by Bojangles allowed them to monitor how many hours Plaintiffs worked. (Doc. Nos. 12-1, 12-2, 12-3, 12-4). Plaintiffs detail that they were required to cover hourly associates' shifts when they were absent from work and that approximately 90% of their time was spent doing manual work and customer service duties—the same tasks assigned to hourly associates. (Doc. Nos. 12-1, 12-2, 12-3, 12-4).

Further, they allege that there is almost no task that AGMs do that is not also performed by hourly associates and that they lacked authority to manage the restaurant at which they worked; instead, General Managers and Area Directors possessed that authority. (Doc. Nos. 12-1, 12-2, 12-3, 12-4). Plaintiffs also assert that they lacked authority over personnel decisions, as General Managers were required to make final decisions on employment matters. (Doc. Nos. 12-1, 12-2, 12-3, 12-4).

AGMs who worked at more than one Bojangles location expressed that the job duties performed as an AGM did not change from one location to another. (Doc. No. 12-1, 12-2, 12-3). Plaintiffs also submit job postings that contain descriptions of the AGM positions in the following locations: Boone, Charlotte, Concord, High Point, Hildebran, Locust, Mooresville, Morganton, Richfield, Spencer, Taylorsville, and Troutman, in North Carolina; Bristol, Johnson City, and Kingsport, in Tennessee;

8

and Fort Mill, Lake Wylie, and Rock Hill, in South Carolina. (Doc. No. 12-5). AGM positions across these locations share the same job description. (*Id.*)

Defendants oppose Plaintiffs' Motion, arguing that Plaintiffs' evidence is insufficient to support conditional certification. (Doc. No. 17 at 1). Defendants contend that Plaintiffs allegations amount to nothing more than a challenge to Defendants' decision to classify a job category as exempt, and merely classifying a job category as exempt is not unlawful. (*Id.* at 8). To the extent that Plaintiffs allege more, Defendants argue that Plaintiffs cannot tie their own anecdotal evidence to a broader policy or practice, and thus, conditional certification of a collective is inappropriate. (*Id.* at 9–10). Lastly, Defendants assert that the proper inquiry involves how Plaintiffs spent their working time and that the limited evidence provided by Plaintiffs is insufficient to show how all AGMs spent their time. (*Id.* at 11).

Here, Plaintiffs have alleged more than mere misclassification of a group of employees as exempt under the FLSA and have made allegations "more substantial" than that Plaintiffs and opt-in Plaintiffs share a job description and job title. Thus, Plaintiffs have shown, considering the low bar at this stage, that they are similarly situated, such that conditional certification of a collective is appropriate. However, the Court also finds that the class should be narrowed.

### B. Proposed Class Definition

Plaintiffs seek conditional certification for a nationwide collective. (Doc. No. 12 at 1). Defendants contend that Plaintiffs' evidence to support its nationwide collective

9

relates to only a small fraction of the geographic areas in which Bojangles operates. (Doc. No. 17 at 2). Specifically, Defendants observe that of approximately 300 Bojangles restaurant locations in multiple states, nine locations in just one state are represented in Plaintiffs' declarations. (*Id.* at 2–3). Accordingly, Defendants ask the Court, should it conditionally certify a collective, to limit the collective to AGMs who worked in the same restaurants or geographic area as the Plaintiffs. (*Id.* at 11).

Plaintiffs base their theory of violation of the FLSA on Defendants' misclassification of AGMs as exempt from overtime. Yet, Plaintiffs' declarations are limited to Bojangles locations in North Carolina. Other AGMs mentioned by the declarants also work at locations within North Carolina. So, while the declarations explain why classification of AGMs as exempt is improper, the declarations only cover locations within North Carolina.

"When declarations come exclusively from a small, geographically homogenous group of declarants, conditional certification of a nationwide collective is inappropriate if the declarants lack personal knowledge about the policies or practices at other offices." *Chapman v. Saber Healthcare Grp., LLC*, 623 F. Supp. 3d 664, 676–77 (E.D. Va. 2022) (first citing *McNeil v. Faneuil, Inc.*, No. 4:15-cv-81, 2016 WL 11673836, at *3 (E.D. Va. Mar. 2, 2016); and then citing *Smith v. Smithfield Foods, Inc.*, No. 2:21-cv-194, 2021 WL 6881062, at *10 (E.D. Va. Dec. 21, 2021), *report and recommendation adopted*, No. 2:21-cv-194, 2022 WL 407378 (E.D. Va. Feb. 9, 2022)). The Court may limit the collective to the geographic location supported by the evidence. *See, e.g.*, *Mackall v. Safelite Grp., Inc.*, No. CV CCB-17-2145, 2017 WL

10

6039717, at *4 (D. Md. Dec. 5, 2017) (limiting conditional class certification to specific locations).

Plaintiffs argue that limiting the geographic scope of notice is inappropriate where Plaintiffs have moved for conditional certification before discovery has begun. (Doc. No. 20 at 11). Plaintiffs attempt to distinguish the cases above as alleging violations of the FLSA that are susceptible to a "rogue manager" in contrast to company-wide misclassification, which is alleged here. Plaintiffs fail to identify any authority where a nationwide class was certified on a similar record to the one currently before the Court. (Doc. No. 20 at 9–11). As explained above, alleging mere misclassification is not sufficient for collective certification, even at this stage. Plaintiff has only made allegations "more substantial" than shared job descriptions and job titles for those members of the collective who work at Bojangles locations within North Carolina. The only evidence presented regarding AGMs from other locations were job descriptions—that is not enough.

Plaintiffs point to previous conditional certification orders by this Court and insist that because this Court did not limit the scope of notice or require a plaintiff's evidence to have a minimum threshold of geographic representation at this stage, it should not limit the geographic scope here. (*Id.* at 10–11). However, Plaintiffs provide no meaningful analysis of how the Court ought to apply its reasoning in those cases to the one at bar. Thus, the Court is unpersuaded. The proposed definition of the conditional collective will be limited to North Carolina employees. The conditional collective will be defined as follows:

All Assistant General managers, Assistant Managers, Assistant Unit Managers, and employees in similar positions but different job titles (collectively "AGMs") who worked for Defendants at any of its restaurant locations in North Carolina from September 19, 2020, to the present.

**C. Notice**

*1. Method of Notice*

Plaintiffs ask the Court to authorize notice by mail, email, and text message with Plaintiffs' proposed Consent to Join Form to be issued along with the mail and email notices. Plaintiffs also ask the Court to authorize the establishment of a website to permit members of the proposed collective to view the Notice, the Complaint, and the order granting conditional certification as well as to electronically submit their Consent to Join forms. (Doc. No. 12 at 14). Defendants contend that Plaintiffs should not be authorized to send notice by text message. (Doc. No. 17 at 13).

The Court has broad discretion in determining how notice will be sent to putative plaintiffs. *Danford v. Lowe's Home Centers, LLC*, No. 5:19-CV-00041-KDB-DCK, 2019 WL 4874823, at *7 (W.D.N.C. Oct. 2, 2019) (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989)). Multiple forms of notice increase the likelihood that potential members of the collective will be reached. *Boyd v. SFS Commc'ns, LLC*, No. CV PJM 15-3068, 2017 WL 386539, at *3 (D. Md. Jan. 27, 2017). This Court has observed that "in an effort to protect the privacy of potential plaintiffs, courts require that plaintiffs show a special need for telephone numbers" and has allowed disclosure of telephone numbers to facilitate notice by text message, but only for those potential plaintiffs whose initial notice by mail and email are returned as undeliverable.

*Williams v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:20-CV-00242-RJC-DSC, 2022 WL 1019241, at *3 (W.D.N.C. Apr. 5, 2022) (first citing *Hathaway v. Smallcakes Steele Creek, LLC*, No. 3:21-CV-00290-FDW-DSC, 2021 WL 4073297 (W.D.N.C. Sept. 7, 2021); and then citing *Hart v. Barbeque Integrated, Inc.*, 299 F. Supp. 3d 762, 772 (D.S.C. 2017)).

Therefore, the Court will authorize notice as requested by Plaintiffs, including the establishment of a website, with one modification—the Court will authorize notice by text message only for those potential plaintiffs whose initial notice by mail and email are returned as undeliverable.

### 2. *Opt-in Period*

Plaintiffs request a 90-day notice period in order to provide "reasonable time for putative plaintiffs to receive notice and join." (Doc. No. 12 at 14). Defendants view the 90-day opt-in period as excessive. (Doc. No. 17 at 14–15).

"District courts in the Fourth Circuit generally authorize opt-in periods between thirty and ninety days." *Chapman*, 623 F. Supp. 3d at 680 (first citing *Privette v. Waste Pro of N.C., Inc.*, No. 2:19-cv-3221, 2020 WL 1892167, at *7 (D.S.C. Apr. 16, 2020); and then citing *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012)). Where defendants "present no sound reason to deny Plaintiff's request for a 90-day opt-in period," district courts have granted requests for a 90-day opt-in period. *Id.*

Because Defendants present "no sound reason to deny" Plaintiffs' request, the

Court will authorize a 90-day opt-in period.

### 3. Reminder Notice

Plaintiffs request that the Court authorize a reminder notice. (*Id.* at 15). Defendants oppose the request for a reminder notice, arguing that a reminder could be seen as an "encouragement by the court to join the lawsuit." (Doc. No. 17 at 14).

Courts in this Circuit have taken numerous approaches to reminder notices. *See Chapman*, 623 F. Supp. 3d at 681 (discussing the different approaches to reminder notices among district courts in the Fourth Circuit). The Court finds reminder notices to be reasonable and appropriate for the objective of ensuring that the notices are read and considered by the recipients. *See Lupardus v. Elk Energy Servs., LLC*, No. 2:19-CV-00529, 2020 WL 4342221, at *9 (S.D.W. Va. July 28, 2020) (approving reminder notices); *see also Chapman*, 623 F. Supp. 3d at 681 (approving reminder notices in light of its decision not to permit text message notice).

Therefore, the Court will authorize reminder notices, as requested by Plaintiffs.

### 4. Production of Names and Address

Plaintiffs also request that the Court order production of names and contact information of members of the proposed collective. (Doc. No. 12 at 16).

District courts have discretion to allow discovery of the names and addresses of potential plaintiffs. *Houston*, 591 F. Supp. 2d at 832 (first citing *Choimbol*, 475 F. Supp. 2d at 563; *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000)). As the Court has authorized notice by mail, email, and text message, under

14

the circumstances explained above, Defendants are ordered to provide the names, dates of employment, addresses, and email addresses of potential plaintiffs within fourteen (14) days of the entry of this Order. Further, if any potential plaintiffs' notice by mail and email are returned as undeliverable, Defendant shall provide their telephone number within ten (10) days of notice by Plaintiffs.

Lastly, Defendants do not object to the content of the notice as provided to the Court. Therefore, the Court will not require the parties to meet and confer on the content of the notice. The notice, as submitted to the Court, will be approved subject to the geographic limitations explained by the Court. Thus, Plaintiffs must ensure that the Court-authorized notice reflects the Court's geographic limitation of the proposed collective.

### III. CONCLUSION

Plaintiffs have brought forth substantial allegations that AGMs were allegedly subject to a common practice which may have resulted in FLSA overtime violations. Thus, notice should issue.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiffs' Motion to Conditionally Certify Conditionally as a Collective Action, (Doc. No. 11), is **GRANTED IN PART** and **DENIED IN PART**, as described herein;

2. The proposed notice, as submitted to the Court, will be approved in the form and manner requested by Plaintiffs, subject to the geographic limitations explained by the Court; and

15

3. Defendants are ordered to provide the names, dates of employment, addresses, and email addresses of potential plaintiffs within fourteen (14) days of the entry of this Order. If any potential plaintiffs' notice by mail and email are returned as undeliverable, Defendants shall provide their telephone number within ten (10) days of notice by Plaintiffs.

**IT IS SO ORDERED.**

Signed: September 11, 2024

*/s/ Robert J. Conrad, Jr.*
Robert J. Conrad, Jr.
United States District Judge

16

Case 3:23-cv-00593-RJC-DCK   Document 24   Filed 09/11/24   Page 16 of 16