# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

```
-----------------------------------------------------X
DORIEN ANDREWS II and CONNER         :
CRISCO, Individually and On Behalf of All :
of All Others Similarly Situated,        :          Civil Action No. 3:23-cv-00593
                                         :
                Plaintiffs,              :
                                         :
        -against-                        :
                                         :
BOJANGLES OPCO, LLC and                  :
BOJANGLES' RESTAURANTS, INC.,            :
                                         :
                Defendants.              :
-----------------------------------------------------X
```

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR SETTLEMENT APPROVAL

Plaintiffs Dorien Andrews II and Conner Crisco, on behalf of themselves and those individuals who have joined this action (together as "Plaintiffs"), move this Court for an order approving the Parties' Settlement Agreement ("Agreement") (attached hereto as Exhibit 1)[1], approving as reasonable the Agreement's proposed award of attorneys' fees and costs, and entering the proposed Approval Order, which is attached hereto as Exhibit 2. In support of this memorandum of law, Plaintiffs state as follows:

## I.    PROCEDURAL HISTORY

On September 19, 2023, Plaintiffs filed a Collective Action Complaint on behalf of themselves and other current and former Assistant General Managers, Assistant Managers, Assistant Unit Directors, and employees in similar positions with different job titles (collectively, "AGMs")

---

[1]    All capitalized terms are defined in the Agreement, which is incorporated by reference into this memorandum of law. Plaintiffs refer the Court to that agreement and its defined terms for consistency.

1

who worked for Defendants Bojangles Opco, LLC and Bojangles' Restaurants, Inc. (collectively, "Bojangles" or "Defendants"), seeking all relief available for claims of unpaid overtime wages under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 et seq. ("FLSA"). ECF No. 1. On October 13, 2023, Bojangles filed their Answer and Affirmative Defenses. ECF No. 10. On October 25, 2023, shortly after Bojangles filed their Answer and Affirmative Defenses, Plaintiffs moved for conditional certification, which was fully briefed by the Parties. *See generally* ECF Nos. 11-12, 20.

On September 11, 2024, the Court granted Plaintiffs' motion for conditional certification in part, limiting the scope of the collective to only those AGMs who worked in North Carolina. ECF No. 24. Court-authorized notice was shortly thereafter distributed to the putative collective, and, following the close of the opt-in period, a total of 256 AGMs joined this action. While the opt-in period was ongoing, the Parties agreed to participate in an in-person mediation in Charlotte, North Carolina, on February 27, 2025, with experienced wage and hour mediator, Kenneth Carlson. ECF No. 39.

In advance of mediation, Bojangles produced a significant amount of pay and time data and multiple policies and procedures for Plaintiffs to analyze. Exhibit 3, Declaration of Logan A. Pardell ("Pardell Decl."), at ¶ 27. Plaintiffs prepared a comprehensive exposure model and mediation statement, and Plaintiffs shared their mediation statement and the basis for their exposure estimate with Bojangles in advance of mediation. *Id.* at ¶¶ 27-28. While the Parties attempted in good faith to negotiate a potential settlement at mediation, the mediation ended in an impasse. ECF No. 62.

After reaching that impasse, the Parties exchanged initial disclosures and each served second-phase discovery. Pardell Decl. at ¶ 33. While discovery was ongoing, the Parties simultaneously reengaged in settlement discussions in an effort to reach a resolution before the Parties expended

significant resources in second-phase discovery, which would have included dozens of depositions and sets of written discovery, and the production of likely tens of thousands of pages of documents. *Id*. at ¶ 34. Following approximately two months of continued negotiations, the Parties reached a settlement in principle. *Id*. at ¶ 35. Thereafter, the Parties negotiated a full settlement agreement, which was fully executed on May 20, 2025. *Id*. at ¶ 36.

## II.   <u>SETTLEMENT AGREEMENT TERMS</u>

The Agreement includes the following key terms:

- The Gross Fund is $260,000.00 for all FLSA Collective Members. Ex. 1 at § 1.13.

- From the Gross Fund, to Class Counsel, an Attorney's Fees and Expenses Payment in an amount of one-third of the Gross Fund (*e.g.* $86,666.66) for attorneys' fees, plus reimbursement of reasonable out-of-pocket expenses. *Id.* at § 1.4.

- From the Gross Fund, to Named Plaintiffs, $5,000.00 each, and, to Shannon Shelton and Shannette Hines, $1,000.00 each, for a total of $12,000.00 for Service Payments. *Id.* at § 1.21.

- From the Gross Fund, to the Settlement Administrator, CPT Group, Inc., payment for the fees and costs of the Settlement Administrator for the administrative services it has already provided to facilitate Court-authorized notice (approximately $10,500.00), and the fees and costs relating to the administrative services it will provide to administer the settlement reflected in the Agreement, which is anticipated to be $12,500.00. *Id.* at §§ 1.23-1.24; Pardell Decl. at ¶ 85.

- To the extent any portion of the Attorney's Fees and Expenses Payment, Service Payments, and Settlement Administrator Costs are not approved in those full amounts, the excess funds will be added to the Net Fund available for distribution to

3

FLSA Collective Members. Ex. 1 at § 2.2.

- To each FLSA Collective Member, the Net Fund (the Gross Fund, minus the Attorney's Fees and Expenses Payment, Service Payments, and Settlement Administrator Costs) will be divided, pro rata, based on the number of workweeks worked during the Liability Period (defined as three years prior to each FLSA Collective Member's opt-in date and through the earlier of the date the Court approves the Agreement and September 1, 2025), with a minimum payment of $100.00. *Id.* at § 2.4 (a).

- In exchange for their Gross Individual Settlement Payments, each FLSA Collective Member will release all claims for unpaid wages while employed as an exempt-classified AGM for Defendants, relating back to the full extent of the federal statute of limitations, and continuing through the end of the Liability Period. *Id.* at § 4.1.

- Any FLSA Collective Member who does not cash their settlement check will not release their claims, and their Gross Individual Settlement Payment will be directed to a *cy pres* recipient. *Id.* at §§ 3.11, 4.1.

## III. <u>ARGUMENT</u>

### A. <u>This Court should approve the Parties' Settlement.</u>

"It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992); *Roldan v. Bland Landscaping Co.*, No. 3:20-cv-00276-KDB-DSC, 2022 U.S. Dist. LEXIS 227906, at *4 (W.D.N.C. Dec. 19, 2022) (quoting same); *Rittmaster v. PaineWebber Group (In re PaineWebber Ltd. Pshps. Litig.),* 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in favor of settlements, particularly in the [class] action context."); *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583-DCN, 2016 U.S. Dist. LEXIS 187745, at *5 (D.S.C.

4

May 26, 2016) (quoting same).

An FLSA collective action is not a class action – individuals participating affirmatively choose to be bound and represented by counsel, and there are no absent class members whose claims are being settled or released. *See Digidio v. Crazy Horse Saloon and Restaurant*, 880 F.3d 135 (4th Cir. 2018). Thus, due process concerns present in class action settlements are not present in FLSA opt-in settlements because absent class members are not bound by the case's outcome and thus do not require the same judicial scrutiny. *Wagner v. Loew's Theatres, Inc.*, 76 F.R.D. 23, 24-25 (M.D.N.C. 1977); *Maguire v. Trans World Airlines, Inc.*, 55 F.R.D. 48 (S.D.N.Y. 1972). Thus, unlike settlements under Rule 23, FLSA settlements are not required to be subject to a two-stage process of preliminary approval followed by final approval, and no final fairness hearing is required. *See, e.g.*, *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986); *Cazeau v. TPUSA, Inc.*, No. 2:18-cv-321, 2021 WL 1688540, at *11 (D. Utah Apr. 29, 2021) ("Unlike Rule 23 class action settlements, fairness hearings are not required for approval of collective action settlements under the FLSA.")

Nonetheless, courts have held that in order to effectuate a release of the settlement of collective claims, the settlement agreement must be presented to the district court for review and determination of whether the settlement is fair and reasonable. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982) (holding that district court review is required for a settlement under the FLSA); *In re: Dollar General Stores FLSA Litigation*, 5:09-MD-1500, 2011 U.S. Dist. LEXIS 98162, *8 (E.D.N.C. Aug. 22, 2011) (examining a FLSA collective settlement); *Wagner*, 76 F.R.D. at 23 (same). For the Court to approve a collective settlement, it must find that the litigation involves a *bona fide* dispute and that the proposed settlement is fair and equitable to all parties. *Lynn's Food Stores,* 679 F.2d at 1354-55 (11th Cir. 1982); *Taylor v. Progress Energy,*

5

*Inc.*, 415 F.3d 264, 371 (4th Cir. 2005). The Court may enter an order approving the agreement only after scrutinizing the settlement for fairness. *See Lynn's Food Stores*, 679 F.2d at 1353. "And the settlement agreement must contain an award of reasonable attorneys' fees." *Porter v. W. Side Rest., LLC*, No. 13-1112-JAR-KGG, 2015 U.S. Dist. LEXIS 19115, at *3 (D. Kan. Feb. 18, 2015).

The standard for court approval is straightforward: a district court should approve a settlement as fair and reasonable if it was reached as a result of an arm's length resolution of contested litigation to resolve a *bona fide* dispute under the FLSA. *Lynn's Food Stores,* 679 F.2d at 1352-54; *Baust v. City of Va. Beach*, 574 F. Supp. 3d 358, 363 (E.D. Va. 2021) ("The court must determine whether the proposed Settlement Agreement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions."). Thus, first, the Court must be satisfied that the settlement was the product of "contested litigation." *Lynn's Food Stores*, 679 F.2d at 1353. Second, the Court must inquire as to whether the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties under the FLSA. *Id.* Typically, courts rely on the adversarial nature of a litigated case resulting in an arms'-length settlement as *indicia* of fairness. *Id*. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* Based upon the contested nature of this case and the quality of the settlement, Plaintiffs respectfully submit that this Court should enter the Approval Order approving the Parties' settlement as a fair and reasonable arms-length resolution of a *bona fide* dispute in contested litigation.

### 1. The proposed settlement is the product of contested litigation.

Unquestionably, the proposed settlement is the product of contested litigation. Plaintiffs alleged that Bojangles maintained a common policy of misclassifying AGMs as exempt and, therefore, unlawfully denied them overtime pay. However, Bojangles has denied and continues to

6

deny each of Plaintiffs' claims and contentions, including that AGMs were misclassified under the FLSA. Bojangles also contends that this Action is not suitable for trial as a collective action and that they would prevail on decertification following second-phase discovery.

To understand the merits of the parties' respective positions, Plaintiffs conducted extensive factual investigations regarding the issues raised in Plaintiffs' Complaint and Defendants' Answer. Pardell Decl. at ¶¶ 18-29. Class Counsel interviewed multiple AGMs about their job duties and compensation structure to prepare the Complaint and gather declarations to eventually move for conditional certification. *Id.* at ¶ 19. Following the issuance of court-authorized notice, Class Counsel gathered pertinent factual information from a majority of the FLSA Collective Members to assist in preparing for mediation, second-phase discovery, and ultimately trial. *Id.* at ¶ 26. In advance of mediation, Bojangles produced a significant amount of pay and time data as well as multiple policies and procedures for Plaintiffs to analyze and develop a comprehensive exposure model and mediation statement. *Id.* at ¶ 27.

Not only was the course of the litigation contested, but the mediation session was also contested. Leading up to mediation, the Parties also undertook considerable legal analysis of the various issues implicated in this case, including the viability of Bojangles' good-faith affirmative defense, Plaintiffs' claims of willfulness, and Bojangles' eventual motion for decertification. *Id.* at ¶ 29. Indeed, throughout mediation, the Parties exchanged and discussed the caselaw that each party felt was relevant to the Action. *Id.* at ¶ 31. However, despite this open dialogue, the mediation ended in an impasse. *Id.* at ¶ 32. It was only after the Parties began the process of engaging in second-phase discovery that the Parties' settlement discussions gained traction and a settlement was eventually reached. *Id.* at ¶¶ 33-35.

As such, because this settlement was reached only after an in-person mediation session

7

with an experienced wage and hour mediator ended in an impasse and the Parties thereafter engaged in several months of continued negotiations, the Court should determine that the settlement was the result of contested litigation. *See Roldan*, 2022 U.S. Dist. LEXIS 227906, at *6 ("arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the [s]ettlement meets the requirements of due process."); *West v. Cont'l Auto., Inc.*, No., 3:16-cv-00502-FDW-DSC, 2018 U.S. Dist. LEXIS 26404, at *12 (W.D.N.C. Feb. 5, 2018) ("The [s]ettlement was not hastily arrived at. Indeed, the [s]ettlement followed lengthy discussions and considerable dialogue between the [p]arties, as well as arms-length negotiations involving extensive argument and counterargument."); *Matthews v. Cloud 10 Corp.*, No. 3:14-cv-00646-FDW-DSC, 2015 U.S. Dist. LEXIS 114586, at *8 (W.D.N.C. Aug. 27, 2015) ("As the Court is aware, the present Class Action Settlement was reached after prolonged arms-length negotiations by experienced counsel on both sides."). Thus, it was not until the Parties had the opportunity to understand the scope of the FLSA Collective, analyze the pertinent factual and legal issues, assess the risks and costs of proceeding through trial, and assess the strengths and weaknesses of the claims and defenses at issue that they were able to reach an agreement. Pardell Decl. at ¶ 37. Accordingly, this Court should readily conclude that the proposed settlement was the product of contested litigation.

### 2. The Agreement fairly and reasonably resolves a bona fide dispute.

This settlement is the product of arm's-length negotiations by experienced counsel and provides significant monetary relief to all FLSA Collective Members. It also eliminates the real, inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness attaches to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA

8

case resulting in settlement as indicia of fairness); *see also Lomascolo v. Brinkerhoff, In*c., 2009 U.S. Dist. LEXIS 89129, at *10 (E.D. Va. Sept. 28, 2009) (noting that "[t]here is a strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate, and reasonable . . . A court is entitled to rely on the judgment of experienced counsel for the parties in performing this balancing task and absent fraud, collusion or the like, a court should be hesitant to substitute its own judgment for that of counsel.") (citation and internal quotation marks omitted); *Pope v. Quest Diagnostics Inc.*, 2024 U.S. Dist. LEXIS 94707, at *8 (E.D. Va. Mar. 21, 2024) (approving settlement as fair and reasonable, in part, "[b]ecause of the strong presumption in favor of finding a settlement fair"); *see also Wingrove v. D.A. Techs., Inc.*, No. 1:10-CV-3227-HLM-WEJ, 2011 U.S. Dist. LEXIS 153759, at *6 (N.D. Ga. Feb. 11, 2011) (recognizing "strong presumption" that collective action settlements are fair and reasonable to plaintiffs); *Howell v. Dolgencorp, Inc.*, No. 2:09-CV-41, 2011 U.S. Dist. LEXIS 5680, at *4 (N.D.W. Va. Jan. 13, 2011) (similar).

As stated *supra* § III.A.1, this Action was hard fought, and settlement was only achieved after Plaintiffs conducted a thorough investigation of the claims, prevailed on conditional certification, engaged in significant pre-mediation preparation, mediation, and several months of post-mediation negotiations. Pardell Decl. at ¶ 46. Following these steps, serious questions of fact and law remained, which placed the ultimate outcome of the litigation in doubt. *Id*. at ¶ 47. While Plaintiffs claimed, among other things, that all FLSA Collective Members were similarly situated, Bojangles contended that they would prevail on decertification because each AGM's experience is unique based upon factors such as restaurant sales volume, variations in restaurant operations, and the different General Managers and Area Directors under whom the AGMs worked. *Id*. at ¶

9

48. Thus, Plaintiffs faced risk regarding decertification of the FLSA Collective. *Id*. at ¶ 49.

Moreover, Plaintiffs faced risk regarding the underlying merits and summary judgment. *Id*. at ¶ 50. Bojangles argues that AGMs' primary duty is managing the restaurant and exercising judgment and discretion over matters of significance, such that Plaintiffs would not prevail on their misclassification claims. *Id*. at ¶ 51. Further, even if summary judgment motions were denied, Plaintiffs faced the risk of persuading a jury that all FLSA Collective Members were owed unpaid overtime wages and, if they were owed such overtime, that Bojangles willfully violated the law such that a three-year statute of limitations period applies to their claims. *Id*. at ¶ 52.

In addition, Class Counsel has significant experience practicing law and regularly represents employees asserting claims under the FLSA. *Id*. at ¶¶ 5, 8-11. As a result, Class Counsel was familiar with the facts and legal issues when the Parties reached the proposed settlement. *Id*. at ¶ 53. Ultimately, Class Counsel relied on this depth of experience and familiarity with the facts of this Action in determining that the proposed settlement was in the FLSA Collective Members' best interests and advising the Named Plaintiffs (as representatives of the collective) of the same. *Id.*

The Agreement offers fair and equitable relief to the FLSA Collective Members. *Id*. at ¶ 54. The $260,000.00 Gross Fund represents more than 50% of the unpaid overtime wages claimed by the FLSA Collective Members under the fluctuating workweek method. *Id*. at ¶ 55. This is a fair result, and courts regularly approve settlements providing for far smaller percentage recoveries than that Plaintiffs have obtained here. *See, e.g.*, *Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.,* 538 F. Supp. 3d 310, 323 (S.D.N.Y. 2021) (collecting cases and approving a settlement amount around 13 percent of plaintiff's potential recovery); *Cartrett v. E. W. Hosp. LLC*, 2018 U.S. Dist. LEXIS 227694, at *3 (N.D. Ga. Apr. 26, 2018) (settlement amount of 50% estimated possible recovery was

10

fair and reasonable resolution of bona fide dispute as to whether an FLSA violation occurred, whether any FLSA violation was willful, the applicable statute of limitations, and the extent of damages for unpaid wages, if any); *Rutland v. Visiting Nurse Assoc. of Central Fla., Inc.* 2008 U.S. Dist. LEXIS 61693, at *1 (M.D. Fla. Aug. 13, 2008) (approving settlement of approximately 6% of plaintiff's claimed overtime wages).

Under the formula set forth in the Agreement, the FLSA Collective Members will receive payments based on an equitable formula that takes into account each FLSA Collective Member's number of weeks worked as an exempt-classified AGM during the Liability Period. Pardell Decl. at ¶ 42. The Liability Period is three years prior to the date the FLSA Collective Member joined the Action, which means that the Agreement presumes Plaintiffs would prevail on proving Bojangles' violations of the FLSA were willful, which is far from a certainty. *Id.* at ¶ 56. The equitable formula provides a gross average payment of $1,015.63 per FLSA Collective Member. *Id.* at ¶ 44.

This result is fair and reasonable, particularly in comparison to the similar, prior lawsuit *Thaxton et al. v Bojangles Restaurants Inc., et al.*, No. 3:18-CV-00665-FDW-DCK, W.D.N.C. ("*Thaxton*"). In *Thaxton,* the plaintiffs brought a nearly identical case as Plaintiffs brought here, claiming that "Assistant Unit Directors" were misclassified as exempt. Exhibit 4 (*Thaxton* Settlement Agreement). The parties in *Thaxton* settled after significant discovery, including 35 depositions. *Id.* In total, *Thaxton* settled for $375,000.00 on behalf of 385 individuals for a gross average payment of $975.03 per class member, which is 4% less per class member than the amount obtained here. *See* Pardell Decl. at ¶ 44. In addition, the counsel in *Thaxton* incurred $65,000.00 in litigation expenses, significantly more than Class Counsel did here, which further increases the disparity between what the average class member ultimately received in *Thaxton* and what the

FLSA Collective Members will receive here. Ex. 4 (*Thaxton* Settlement Agreement); Pardell Decl. at ¶¶ 81-86. This Court approved the settlement agreement in *Thaxton*, and it should do so here. *Thaxton v. Bojangles' Rests.*, No. 3:18-CV-00665-MOC-DCK, 2020 U.S. Dist. LEXIS 225834, at *9 (W.D.N.C. Mar. 4, 2020).

Moreover, Plaintiffs further ensured the fairness of this settlement by only having those FLSA Collective Members who cash their settlement checks release their claims. Pardell Decl. at ¶ 57. This allows FLSA Collective Members to not automatically be bound to the terms of the Agreement and instead make an informed decision about whether to accept the settlement payment or potentially separately pursue their own claim. *Id*. This choice that each FLSA Collective Member receives under the Agreement further supports the Agreement's fairness.

In sum, the Agreement provides for significant relief to the FLSA Collective Members, warranting approval. *Id*. at ¶ 58. Further, if the settlement is not approved, any recovery through litigation may not occur until after years of litigation and appeals. *Id*. at ¶ 59. Or, such recovery may not occur at all. *Id*. For these reasons, settlement approval now is in the best interest of the FLSA Collective Members.

Accordingly, this Court should conclude that the proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute.

## B. This Court should approve the requested Service Payments.

The Agreement provides for Service Payments of $12,000.00 broken down as follows: $5,000.00 each for Named Plaintiffs Dorien Andrews II and Conner Crisco; and $1,000.00 each to Shannon Shelton and Shannette Hines, each of whom provided invaluable service to Class Counsel and, ultimately, the FLSA Collective Members. *Id*. at ¶¶ 60-61. These "Service Payment Recipients" worked with Class Counsel for approximately two years, both before and throughout

this litigation, to pursue these claims on behalf of FLSA Collective Members. *Id.* ¶ 62. Service

Payment Recipients were each instrumental in identifying evidence and providing statements,

which allowed for the filing of this Action, and thereafter prevailing on conditional certification.

*Id.* ¶ 63. Named Plaintiffs, in particular, informed Class Counsel on many of Bojangles'

documents, policies, and practices, and assisted Class Counsel in preparation for mediation, and

participated in the mediation. *Id.* ¶ 64. This service enabled Class Counsel to obtain the best

settlement result possible for all FLSA Collective Members. *Id.* ¶ 65. The requested Service

Payment Allocation rewards Service Payment Recipients for their service to the FLSA Collective

Members.

"Courts around the country have approved substantial incentive payments in FLSA

collective actions and other employment-related class actions." *DeWitt v. Darlington Cty.*, No.

4:11-cv-00740-RBH, 2013 U.S. Dist. LEXIS 172624, at *38-39 (D.S.C. Dec. 6, 2013) (collecting

cases).

> Such payments compensate Plaintiffs for their additional efforts, risks, and
> hardships they have undertaken as class representatives on behalf of the group in
> filing and prosecuting the action. Service or incentive payments are especially
> appropriate in employment litigation, where the plaintiff is often a former or current
> employee of the defendant, and thus, by lending his name to the litigation, he has,
> for the benefit of the class as a whole, undertaken the risk of adverse actions by the
> employer or co-workers.

*Id.* (internal quotations omitted); *see also Boyd v. Coventry Heath Care, Inc.*, 299 F.R.D. 451, 468

(D. Md. 2014) (awarding $5000 incentive awards to each of five class representatives because courts

within the Fourth Circuit have recognized that because a named plaintiff is an "essential ingredient

of any class action, a service award is appropriate if it is necessary to induce an individual to

participate in the suit.") Accordingly, Courts have recognized that the time and dedication an

individual devotes to a class or collective action lawsuit that inures to the common benefit of others

13

warrants a service award above-and-beyond what the typical class member is receiving. *See, e.g., Roldan*, 2022 U.S. Dist. LEXIS 227906, at \*18 ("A service award of $ 25,000.00 or less is well within the range of reasonable incentive awards approved by the courts); *see Kirkpatrick v. Cardinal Innovations Healthcare Sols*., 352 F. Supp. 3d 499, 507 (M.D.N.C. 2018) (awarding a $10,000.00 service payment because the named plaintiff "worked with collective counsel for approximately two-and-a-half years to pursue these claims on behalf of the collective members and identified and contacted initial collective members"); *Williams v. GbR Pizza, Inc*., No. 1:21cv00828, 2023 U.S. Dist. LEXIS 233405, at \*10-11 (M.D.N.C. Apr. 26, 2023) (approving $10,000.00 service payment to the class representative); *McCurley v. Flowers Foods, Inc.,* No. 5:16-CV-00194-JMC, 2018 U.S. Dist. LEXIS 228496, at \*22 (D.S.C. Sept. 10, 2018) ("Plaintiff requests an amount of $25,000.00, which is well within the range of reasonable incentive awards approved by the courts")*; Savani v. McBean v. City of New Yo*rk, 233 F.R.D. 377, 391-92 (S.D.N.Y. 2006) (stating incentive awards of $25,000 are "solidly in the middle of the range"). Thus, this Court should approve the modest Service Payments requested in this case as a reward for the Service Payment Recipients' contributions to the case and to the FLSA Collective Members' recovery as a whole.

## C.  The Attorneys' Fees and Expenses Payment requested is reasonable and warrants this Court's approval.

Plaintiffs seek an award of one-third of the Settlement Amount (*e.g.* $86,666.66) as their attorneys' fees incurred in this case, plus reimbursement of $5,484.30 for Plaintiffs' costs and expenses. Though an award of attorneys' fees in an FLSA settlement is mandatory, the Court has discretion to determine the reasonableness of the fee. *See Lynn Food Stores,* 679 F.2d at 1354.

Considering the standard for percentage fees awarded in other common fund cases, and also applying the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), as explained below, the attorneys' fees and costs Plaintiffs seek in this case are

14

reasonable and warrant this Court's approval. *See McAfee v. Boczar*, 738 F.3d 81, 88 n. 5 (4th Cir. 2013) (observing that the Fourth Circuit has adopted the twelve *Johnson* factors for determining the reasonableness of attorney's fees).

### 1. One-third of the Gross Fund is a reasonable fee.

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his clients is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted). "The common fund doctrine is grounded in the belief that to deny attorneys a recovery of their fees from the funds they helped create would unjustly enrich the class members at the expense of their attorneys and representatives." *In re Microstrategy, Inc.*, 172 F. Supp. 2d 788, 784 n.16 (E.D. Va. 2001) (citing *Boeing*, 444 U.S. at 478). Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *See Latham v. Branch Banking & Tr. Co.*, No. 1:12-cv-00007, 2014 U.S. Dist. LEXIS 16490, at *7 (M.D.N.C. Jan. 14, 2014) ("[f]ee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel," and awarding $450,000 in attorney's fees, from a total settlement of $1,800,000, although the lodestar amount was only $246,485).

Although the lodestar method and the percentage of the fund method are both available, the trend in the Fourth Circuit is to use the percentage of the fund method in common fund cases . *See Phillips v. Triad Guar, Inc.*, No. 1:09CV71, 2016 U.S. Dist. LEXIS 60950, at *5 (M.D.N.C. May 9, 2016); *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 758 (S.D. W. Va. 2009); *see also Hess v. Sprint Communs. Co. L.P.*, No. 3:11-cv-00035-JPB, 2012 U.S. Dist. LEXIS 168963,

at *6 (N.D.W. Va. Nov. 26, 2012) (collecting cases within the Fourth Circuit using the percentage method); Federal Judicial Center, Manual for Complex Litigation (Fourth) § 14.121 at 187 ("After a period of experimentation with the lodestar method . . . the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases.").

There are several reasons that courts prefer the percentage method. First, the percentage method "better aligns the interests of class counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys." *Jones*, 601 F. Supp. 2d at 759; *see also Phillips*, 2016 U.S. Dist. LEXIS 60950, at *6 (stating that the percentage method is preferred because it "closely associates the attorneys' fees with the overall result achieved."); *Hess*, 2012 U.S. Dist. LEXIS 168963, at *7; *In re Wachovia Corp. ERISA Litig.*, 2011 U.S. Dist. LEXIS 123109, at *16 (W.D.N.C. Oct. 24, 2011).

Second, the percentage of the fund method promotes early resolution and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation to increase their billable hours. *See Jones*, 601 F. Supp. 2d at 759 ("[W]hen the lodestar method is applied, class counsel has an incentive to 'over-litigate' or draw out cases in an effort to increase the number of hours used to calculate their fees."); *In re Wachovia*, 2011 U.S. Dist. LEXIS 123109, at *16 (noting that the percentage method promotes efficiency); *In re Microstrategy, Inc.*, 172 F. Supp. 2d at 787 (same).

Third, the percentage method preserves judicial resources because it "is more efficient and less burdensome than the traditional lodestar method." *See Fangman v. Genuine Title, LLC*, 2016 U.S. Dist. LEXIS 160434, at *14 (D. Md. Nov. 18, 2016); *Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 569 (D.S.C. 2015); *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 503 (E.D. Va. 1995). The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed

16

review of line-item fee audits." *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000). While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, they are not required to scrutinize the fee records as rigorously. *See Hall v. Higher One Machs., Inc.*, 2016 U.S. Dist. LEXIS 131009, at *20 (E.D.N.C. Sep. 26, 2016); *Phillips*, 2016 U.S. Dist. LEXIS 60950, at *6-7; *In re Wachovia*, 2011 U.S. Dist. LEXIS 123109, at *16; *Smith v. Krispy Kreme Doughnut Corp.*, 2007 U.S. Dist. LEXIS 2392, at *9 (M.D.N.C. Jan. 10, 2007).

Class Counsel's requested fee is one-third of the Gross Fund, which is consistent with Class Counsel's retainer agreement with Plaintiffs (which provides for a one-third contingency fee)— Pardell Decl. at ¶ 78—and with fees awarded in other class/collective action settlements. *See Davidson v. Daimler Trucks N. Am. LLC*, No. 3:19-cv-00543-RJC-DCK, 2021 U.S. Dist. LEXIS 257881, at *5 (W.D.N.C. Nov. 19, 2021) (Conrad, J.) (awarding one-third of the gross fund for attorneys' fees); *Faile v. Lancaster Cty.*, 2012 U.S. Dist. LEXIS 189610, at *28-29 (D.S.C. Mar. 8, 2012) (citing *Bredbenner v. Liberty Travel, Inc.*, 2011 U.S. Dist. LEXIS 38663 (D.N.J. Apr. 8, 2011) ("the court cited to cases from district courts throughout the country in common fund cases where attorney's fee awards 'generally range anywhere from nineteen percent (19%) to fortyfive percent (45%) of the settlement fund'"); *Howes v. Atkins*, 668 F. Supp. 1021 (E.D. Ky. 1987) (awarding 50% of $1,000,000 common fund, including expenses); *In re Ampicillin Antitrust Litigation*, 526 F. Supp. 494 (D.D.C. 1984) (awarding 45% of $7,300,000 common fund plus costs); *Beaulieu v. Eq Industrial Services, Inc., et al.*, 5:06-CV-00400-BR (E.D. N.C. Oct. 9, 2009) (awarding 38% of the $7,850,000.00 common fund plus costs); *DeWitt*, 2013 U.S. Dist. LEXIS 172624, at *9 (collecting FLSA cases where courts approved attorney fees of one-third of the recovery in contingency cases).

Accordingly, an award of one-third of the common fund plus out-of-pocket costs and expenses is abundantly reasonable in this case and is in accordance with the standard set in this district as well as nationally.

      **2.**      **The requested fee is reasonable when analyzed under the *Johnson* factors.**

Other factors that courts consider in determining the reasonableness of an attorneys' fee award include the following twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974): (1) time and labor required; (2) novelty and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and the results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the twelve factors set forth in *Johnson*); *see also Roldan*, 2022 U.S. Dist. LEXIS 227906, at \*14 (same); *Kirkpatrick*, 352 F. Supp. 3d at 504 (M.D.N.C. 2018) (same). Applying these factors here confirms the reasonableness of the requested fee.

- *Johnson* Factor 1: Time and Labor Involved:

This case required Class Counsel to expend significant time and labor in pursuing these claims and the amount of fees sought is significantly less than Class Counsel's lodestar fee. Specifically, Class Counsel litigated the claims in this case for two years and invested to date over 294 hours working on this case with no assurance of any recovery at all. Pardell Decl. at ¶¶ 69-70, 88. These hours include: (i) time spent investigating the facts of this case; (ii) interviewing AGMs regarding their work experiences; (iii) drafting the complaint; (iv) briefing Plaintiffs' motion for

conditional certification, including gathering the necessary declarations; (v) engaging in the administration of Court-authorized notice the putative collective, including coordinating with the third-party administrator, organizing and filing incoming consent forms; (vi) answering questions from putative collective members; (vii) obtaining necessary information from the FLSA Collective Members about the merits of the claims and certification; (viii) analyzing pay and time records; (ix) creating a damages model and performing damage calculations in preparation for mediation; (x) mediating this action; (xi) drafting discovery requests and initial disclosures; (xii) negotiating a settlement favorable to all FLSA Collective Members; (xiii) devising a settlement allocation formula to ensure an equitable distribution of funds; (xiv) drafting the Agreement; and (xv) drafting the approval papers. *Id.* at ¶ 75.

And, while this District and other courts within this Circuit have applied a "lodestar cross-check" to determine whether fees sought are reasonable, Class Counsel is seeking *less* than their lodestar with this settlement. As of the filing of this application, Class Counsel's lodestar is approximately $146,250.00 at their standard hourly rates.[2] Pardell Decl. at ¶ 70. However, with this settlement, Class Counsel only seeks to recover $86,666.66, resulting in a 41% reduction of Class Counsel's lodestar. *Id.* at ¶ 79. Notwithstanding, even if Class Counsel applies a 10% discount on its rates to account for the fact that the hourly rates in this District may be lower than in other jurisdictions around the country,[3] the Settlement still reflects a 34% reduction in Class

---

[2]    Class Counsel's standard hourly rates are consistent with the rates previously approved for Class Counsel by courts throughout the country. *See, e.g. Lawson v. Love's Travel Stops & Country Stores, Inc.*, 2021 U.S. Dist. LEXIS 33983, at *5-6 (M.D. Pa. Feb. 24, 2021) (approving attorney fee request based on rates of $750/hour, $575/hour, and $400/hour, for Gregg I. Shavitz, Paolo C. Meireles, and Logan A. Pardell, respectively, when Mr. Pardell was an associate for Gregg Shavitz and, now, has the nearly same level of experience as Paolo Meireles had at the time of the motion); *Meo v. Lane Bryant, Inc.*, 2020 U.S. Dist. LEXIS 126921, at *7 (E.D.N.Y. July 17, 2020) (same).

[3]    *See*, *e.g.*, *Kirkpatrick,* 352 F. Supp. 3d at 506–07 (M.D.N.C. 2018) (approving $575 an hour); *In re Dollar Gen. Stores FLSA Litig.*, 2011 U.S. Dist. LEXIS 98162, at *14 (E.D.N.C. Aug. 22, 2011) (approving

19

Counsel's collective lodestar. Pardell Decl. at ¶ 80.

The fees sought by Class Counsel are certainly reasonable considering that courts routinely approve multipliers above and beyond the lodestar as reasonable fee awards in class cases. *See*, *e.g.*, "Courts have found that lodestar multipliers ranging from 2 to 4.5 demonstrate the reasonableness of a requested percentage fee." *Phillips v. Triad Guar., Inc*., 2016 U.S. Dist. LEXIS 60950, at \*25 (M.D.N.C. May 9, 2016) (collecting cases); *Cohan v. Columbia Sussex Mgmt., LLC*, 2018 U.S. Dist. LEXIS 170192, at \*15-16 (E.D.N.Y. Sep. 28, 2018) (collecting cases in which courts routinely approve fees that are "two to six times the lodestar"); *Weston v. TechSol, LLC*, No. 17 Civ. 0141, 2018 WL 4693527, at \*9 (E.D.N.Y. Sept. 26, 2018) (same); *accord Tanski v. AvalonBay Communities, Inc.*, No. 15 Civ. 6260, 2020 WL 2733989, at \*3 (E.D.N.Y. May 26, 2020) (collecting cases with multipliers ranging from 2.02 to 3.5 and noting that multipliers exceeding 4 are routine); *In re Bank of Am. Wage & Hour Emp't Litig.*, 2013 WL 6670602, at \*3 (approving a fee award representing a 1.10 multiplier of the lodestar); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (finding that percentage fee award resulting in a lodestar multiplier of 1.18 was "imminently reasonable" based on counsel's risks associated with taking the case).

As such, given that Plaintiffs seek to recover significantly less than Class Counsel's time and labor invested in this case, this factor weighs heavily in favor of approving the fee as reasonable. *Kirkpatrick*, 352 F. Supp. 3d at 507 ("Since collective counsel's lodestar multiplier is far below those generally accepted, their requested fees are reasonable.") It is important to remember that this is Class Counsels' only opportunity to be awarded fees for the work on this case. However, their work to administer the settlement will continue after this application without any compensation. Pardell Decl. at ¶ 76. As an example, there will be inquiries from the FLSA

_____

rates up to $375 per hour over ten years ago).

Collective Members regarding the terms and consequences of the settlement and the computation and payout of the settlement. *Id.* Class Counsel will perform this work without any additional compensation. *Id.*

- *Johnson* Factor 2: Novelty and Difficulty of Question Presented:

FLSA collective actions are both procedurally and substantively complex. This presents unique evidentiary hurdles to establishing both liability and damages in a case such as this. Bojangles contends that certification cannot be maintained after second-phase discovery, in part, because they claim that FLSA Collective Members worked for different General Managers and District Managers and worked at restaurants of varying volumes. *Id.* at ¶ 48. Accordingly, the volume of evidence that must be considered, and the procedural difficulties involved in maintaining certification, weigh in favor of approving the fee requested.

- *Johnson* Factor 3: Skill Required to Perform Legal Service Properly:

Logan A. Pardell, the lead attorney for Class Counsel, practices almost exclusively in plaintiff-side collective actions. *Id.* at ¶¶ 5, 8-10. Class Counsel stays abreast of the changing law to ensure they maximize their clients' recovery in their cases pending across the United States. *Id.* at ¶ 11. This is because it is a unique niche area of law, the landscape of which changes regularly as a result of growing jurisprudence spanning the entire country. *Id.* Few firms litigate FLSA collective action cases on behalf of employees due to their investment of time, energy, and financial resources required to appropriately pursue them. Due to the nature of FLSA collective litigation, attorneys handling these cases must also be prepared to make these investments with the very real possibility of ultimately obtaining no attorney fees or recovery of costs expended. *Id.* at ¶ 89. This type of risk is outside the scope of risk that most attorneys and firms can and are willing to handle.

21

- *Johnson* Factor 4: Preclusion of Other Employment:

Class Counsel litigated this case for more than two years. *Id*. at ¶ 69. During that time, the work performed by Class Counsel placed significant demands on Class Counsel's time and resources. *Id*. at ¶ 90. This is particularly true because Pardell, Kruzyk & Giribaldo, PLLC is only a three-attorney firm with no administrative staff. *Id*. For example, in anticipation of reviewing the tens of thousands of documents that were going to be produced in this case and dozens of depositions, Class Counsel turned down or otherwise did not pursue other potentially lucrative work. *Id.* ¶ 91. As Class Counsel's ability to take on additional cases during the course of this litigation was limited, this factor weighs in favor of approval.

- *Johnson* Factor 5: Customary Fee:

Class Counsel routinely charges a one-third contingency fee, and that is the fee for which Named Plaintiffs contracted for representation in this case. *Id.* at ¶ 79. Class Counsel has agreed to only seek a one-third contingency fee with this Agreement, and this factor weighs in favor of approval.

- *Johnson* Factor 6: Whether Fee is Fixed or Contingent:

As explained for Factor 5, Class Counsel took this case on a contingency-fee basis. Accordingly, Class Counsel undertook this litigation with the risk of obtaining nothing if no recovery was obtained for Plaintiffs or the FLSA Collective Members. Moreover, Class Counsel's contingency arrangement required them to invest both time and expenses with no guarantee of recoupment. *Id.* at ¶ 87-88. This factor favors fee approval.

- *Johnson* Factor 7: Time Limitations Imposed:

While there were no unusual time limitations imposed by this case, the nature of this complex litigation posed a significant time commitment, as discussed in more detail for Factors 1

22

and 4 above.

- *Johnson* Factor 8: Amount Involved and Results Obtained:

Class Counsel obtained a favorable result for all FLSA Collective Members, with a gross average payment of $1,015.63 per FLSA Collective Member. *Id*. at ¶ 44. Class Counsel was able to obtain this result relatively early in the Action, before the commencement of protracted and lengthy second-phase discovery. *Id*. at ¶¶ 33-36. This is also a positive result when considering the inherent risks to continued litigation and the very real possibility that Plaintiffs might not have prevailed on every contested issue in this action. *Id*. at ¶¶ 47-52.

- *Johnson* Factor 9: Experience, Reputation and Ability of Attorneys:

Class Counsel has significant experience in litigating collective action cases across the country and has an impeccable reputation for success in this area of law. The attorneys at Pardell, Kruzyk & Giribaldo PLLC decades of legal experience and have served as class counsel in several collective actions. *Id*. at ¶¶ 8-15. Class Counsel has recovered many millions of dollars on behalf of FLSA collective action members across the country. *Id.* The attorneys at Cox, Stansberry & Kinsley served as local counsel and the attorneys have decades of experience representing Plaintiffs in complex cases such as this, including consumer class actions, products liability and mass tort actions. *Id.* at ¶ 16. This factor weighs in favor of approval.

- *Johnson* Factor 10: Undesirability of the Case:

Class Counsel did not find this case undesirable to prosecute. However, many attorneys are reluctant to take on cases such as this where there is a very real risk of no recovery and the time commitment is significant.

- *Johnson* Factor 11: Nature and Length of the Professional Relationship:

As stated above, Named Plaintiffs engaged Class Counsel's services well over two years

23

ago to represent them in this FLSA collective action.

- *Johnson* Factor 12: Awards in Similar Cases:

Fee awards of one-third of the common fund are regularly approved in common-fund collective action cases. *See, e.g., Davidson,* 2021 U.S. Dist. LEXIS 257881, at *5 (W.D.N.C. Nov. 19, 2021) (Conrad, J.) (awarding one-third of the gross fund for attorneys' fees); *Faile,* 2012 U.S. Dist. LEXIS 189610, at *28-29 (D.S.C. Mar. 8, 2012) (*citing Bredbenner*, 2011 U.S. Dist. LEXIS 38663 ("the court cited to cases from district courts throughout the country in common fund cases where attorney's fee awards 'generally range anywhere from nineteen percent (19%) to fortyfive percent (45%) of the settlement fund.'"); *Howes,* 668 F. Supp. 1021 (awarding 50% of $1,000,000 common fund, including expenses); *In re Ampicillin Antitrust Litigation*, 526 F. Supp. at 494 (awarding 45% of $7,300,000 common fund plus costs); *DeWitt,* 2013 U.S. Dist. LEXIS 172624, at *9 (collecting FLSA cases where courts approved attorney fees of one-third of the recovery in contingency cases). The prevalence of fee awards of one-third of the common fund in FLSA cases supports a fee award of one-third of the common fund created here.

Applying the *Johnson* factors, Class Counsels' fee request is reasonable and warrants approval.

### 3. Plaintiffs' request for costs and expenses is also reasonable.

An award of reasonable attorneys' costs and expenses is also mandatory under the FLSA. *See* 29 U.S.C. § 216(b). This includes "reasonable out of pocket expenses" that go "beyond those normally allowed under Fed. R. Civ. P 54(d) and 28 U.S.C. § 1920." *Smith v. Diffee Ford Lincoln-Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002); *Lamon v. City of Shawnee, Kan.*, 754 F. Supp. 1518, 1524 (D. Kan. 1991) (noting expenses generally include "all reasonable out-of-pocket expenditures" that are not "normally absorbed as part of law firm overhead"), *rev'd* in part on other

24

grounds by 972 F.2d 1145; *see also Calderon v. Witvoet,* 112 F.3d 275, 276 (7th Cir. 1997) (observing that expenses such as travel are not "costs" under 29 U.S.C. § 1920, but "are nonetheless reimbursable-but as part of the award for attorneys' fees, because travel and meal expenses are the sort of things that a lawyer includes with a bill for professional services.").

Class Counsel requests reimbursement for a total of $5,484.30 in expenses.[4] Pardell Decl. at ¶ 81. These expenses were reasonably and necessarily incurred in the prosecution of the case. *Id.* at ¶ 82. These expenses include filing fees, pro hac vice fees, travel expenses for mediation, and the mediation fee. *Id.* at ¶¶ 81, 83. The expenses include only Class Counsel's out-of-pocket expenses and are exclusive of the Settlement Administrator Costs, which include the yet-to-be-paid $10,500.00 for the dissemination of Court-authorized notice, plus the expenses yet to be incurred for the administration of the settlement, which the Settlement Administrator advised would be approximately $12,500.00. *See* Ex. 1 (Settlement Agreement) at § 1.15; Pardell Decl. at ¶¶ 84-86. Accordingly, Plaintiffs request that this Court approve Class Counsel's award of costs and expenses in the amount of $5,484.30, as well as the Settlement Administrator Costs (expected to be at total of $23,000.00), all to be deducted from the Gross Fund.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs request this Court: (i) approve the Parties' Settlement Agreement as fair and reasonable and enter the proposed Approval Order, which is attached hereto as Exhibit 2; and (ii) enter any other relief this Court deems appropriate.

---

[4]     To the extent that Class Counsel incurs any additional out-of-pocket expenses prior to the Court granting approval of this settlement, Plaintiffs reserve the right to amend their request for reimbursement of expenses to include such additional expenses.

25

Dated: June 6, 2025

By: */s/ Logan A. Pardell*
Logan A. Pardell* (admitted *pro hac vice*)
**Pardell, Kruzyk & Giribaldo, PLLC**
433 Plaza Real, Suite 275
Boca Raton, FL 33432
Telephone        (561) 726-8444
Facsimile        (877) 453-8003
lpardell@pkglegal.com

Bryan A. Giribaldo, Esq. * (admitted *pro hac vice*)
**Pardell, Kruzyk & Giribaldo, PLLC**
7500 Rialto Blvd.
Suite 1-250
Austin, Texas 78735
Telephone: (561) 726-8444
Facsimile (877) 453-8003
bgiribaldo@pkglegal.com

Brian L. Kinsley
**Cox, Stansberry & Kinsley**
2024 Main Street, SW Suite B
Cullman, AL 35056
Telephone: (205) 870-1205
Facsimile: (205) 870-1252
Blkinsley@cskattorneys.com

Counsel for Plaintiffs and FLSA Collective Members

26

## CERTIFICATION REGARDING USE OF ARTIFICIAL INTELLIGENCE

Undersigned counsel hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to the authority provided.


Dated: June 6, 2025                    By: */s/ Logan A. Pardell*
                                       Logan A. Pardell* (admitted *pro hac vice*)